UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____X

RAYMOND CHONG,

              Plaintiff,                  CV-06-1287 (SJF)(MLO)

   -against-

                               **OPINION & ORDER**

HEALTHTRONICS, INC. d/b/a
HEALTHTRONICS SERVICE CENTER, INC.,

              Defendant.

_____X

FEUERSTEIN, J.

     On March 21, 2006, plaintiff Raymond Chong (plaintiff) filed this diversity action against

Healthtronics, Inc. d/b/a Healthtronics Service Center, Inc. (defendant) alleging claims for, *inter*

*alia*, breach of contract, fraud, and violations of sections 190 and 198, *et seq.*, of the New York

State Labor Law. Defendant now moves (1) pursuant to Rules 12(b)(2) and 12(b)(3) of the

Federal Rules of Civil Procedure to dismiss the complaint for lack of personal jurisdiction and/or

improper venue; or (2), in the alternative, pursuant to 28 U.S.C. § 1404(a), to transfer this case to

the United States District Court for the Northern District of Georgia; or (3), in the alternative,

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for

failure to state a claim. For the reasons stated herein, defendant's motion is granted in part and

denied in part.

I.  Background

   A.  Factual Background

      1.  The Parties

Plaintiff is a citizen of the State of New York, residing in Centereach, New York. (Complaint [Compl.], ¶ 5).

Defendant is a foreign corporation, incorporated under the laws of the State of Georgia. (Affidavit of Kari Smith dated June 2, 2006 [Smith Aff.], ¶ 3; Affidavit of Dr. Argil Wheelock dated June 31 [sic], 2006 [Wheelock Aff.]).  During the period of plaintiff's employment with defendant, defendant had its headquarters in Marietta, Georgia.  (Smith Aff. ¶ 3; Wheelock Aff., ¶ 2).[1]  According to Kari Smith (Smith), associate counsel for defendant (Smith Aff., ¶ 2), defendant does not maintain a license to do business or any assets, offices, books, bank accounts, a listed telephone number, or a mailing address in the State of New York and does not have any employees who work in New York.  (Smith Aff., ¶ 4).  In addition, Smith avers that defendant did not have any taxable income from New York for the years from 1999 through 2003, and had only two hundred ninety-three thousand three hundred sixty-four dollars ($293,364) of taxable income from New York in 2004, which represented less than one percent (.505%) of its total income for that year.  (Reply Affidavit of Kari Smith dated August 3, 2006 [Smith Reply Aff.], ¶ 3).[2]

---

[1]  Defendant currently has its headquarters in Austin, Texas but continues to maintain offices in Georgia.  (Smith Aff. ¶ 3; Wheelock Aff., ¶ 2).

[2]  Although personal jurisdiction is determined as of the time the lawsuit is filed, see Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, 937 F.2d 44, 52 (2d Cir. 1991), Ms. Smith notably does not indicate what, if any, taxable income defendant derived from New York in 2005 and 2006.

2

Plaintiff maintains, "upon information and belief" that defendant is the majority partner in Metropolitan Lithotriptor Associations (MLA), which conducts business in at least four (4) locations in New York. (Supplemental Affidavit of Raymond A. Chong dated June 26, 2006 [Plf. Supp. Aff.], ¶ 5). However, according to Smith, MLA is a professional corporation wholly owned by physicians which maintains the New York offices to which plaintiff refers. (Smith Reply Aff., ¶ 13). Moreover, according to Smith, defendant does not have any ownership interest in MLA and the two companies do not share any of the same officers. (Smith Reply Aff., ¶¶ 15, 17).

Plaintiff further contends that defendant has advertised in New York regarding its products and services and has sold approximately five (5) lithotripsy and/or orthotripsy machines in New York during the past five (5) years. (Plf. Supp. Aff., ¶¶ 1-2). However, according to Smith, defendant has not directed any advertising to New York, but has simply included information on its equipment in national trade journals. (Smith Reply Aff., ¶¶ 4-5).

### 2. Plaintiff's Employment

According to plaintiff, he and Bradley Devine (Devine) had created a health service company which they agreed to merge with defendant to form a new company called HealthTronics Technical Service Division (HTSD). (Compl., ¶ 12). According to Dr. Argil Wheelock (Wheelock), defendant's former Chief Executive Officer, he discussed the creation of a service department within defendant with Devine. (Wheelock Aff., ¶ 4). Wheelock avers that those discussions took place entirely in Georgia. (Id.). Wheelock does not recall having any personal discussions with plaintiff about the creation of a service department. (Id..). Plaintiff

alleges that all negotiations with him regarding the "business venture" with defendant were done "via telephone, e-mail and fax between [plaintiff], here in New York, and [defendant] in Georgia." (Affidavit of Raymond A. Chong dated June 26, 2006 [Plf. Aff.], p. 1).

Plaintiff alleges that he and Devine entered into a written profit-sharing agreement with defendant, which was based upon their respective percentage of ownership in the new company. (Compl., ¶ 13; see also Affidavit of Bradley G. Devine dated June 21, 2006 [Devine Aff.], p. 3). According to plaintiff, he and Devine owned sixty-one and a half percent (61.5%) of the net profit of HTSD. (Id.; see also Plf. Aff., p. 1). Plaintiff contends that the payments he received from defendant, purportedly pursuant to the profit-sharing agreement, were significantly less than he was supposed to receive under the agreement. (Compl., ¶¶ 16-20). According to Wheelock, the payments plaintiff believes are due him as compensation under any profit-sharing agreement actually constituted bonuses, which were approved and paid out of defendant's Georgia headquarters. (Wheelock Aff., ¶¶ 8, 10).

On or about September 1, 1999, defendant hired plaintiff as a senior field service manager. (Compl., ¶¶ 10-11). According to Wheelock, the decision to hire plaintiff was made in defendant's Georgia headquarters. (Wheelock Aff., ¶ 6). On or about that same date, plaintiff entered into a Non-Statutory Employee Stock Option Agreement (the stock option agreement), which was "intended to provide additional financial incentive to [plaintiff] and to intensify [plaintiff's] interest in the success of [defendant], as well as reward [plaintiff's] contribution to [defendant's] performance." (Wheelock Aff., ¶ 7, Exhibit [Ex.] B, p. 1). The stock option agreement was expressly governed by the laws of the State of Georgia. (Wheelock Aff., Ex. B, ¶ 12).

4

Plaintiff alleges that he began employment with defendant on September 6, 1999, at which time he went to Georgia to train. (Plf. Aff., p. 1). According to Wheelock, during the course of his employment, plaintiff worked both out of his home in New York and in defendant's Georgia headquarters, and traveled to other states and Canada, but he always reported to Devine in Georgia. (Wheelock Aff., ¶ 12). Plaintiff avers that during the course of his employment, he managed the Field Service Engineers and taught classes for defendant, attended meetings and occasionally substituted for Devine in Georgia. (Plf. Aff., pp. 1-3). However, plaintiff also claims that he serviced equipment "in the New York Metro area," as well as in New England and Toronto; that he conducted business nationally and internationally from New York via telephone, e-mail and postal service; that he performed other services for defendant for clients in other states from New York or by traveling to the client's respective states; and that during his employment with defendant, he "established and cultivated five (5) new business accounts located in New York on behalf of [defendant]." (Id. at pp. 1-2; Plf. Supp. Aff., ¶ 4).

According to plaintiff, in January 2004, he and Devine[3] met with Martin McGahan (McGahan), defendant's former Chief Financial Officer, who informed them that defendant wanted to eliminate the profit-sharing agreement. (Compl., ¶ 14). Plaintiff contends that in January 2004, he complained to defendant's management about not being paid his earned wages. (Compl. ¶ 22).

Plaintiff alleges that in February 2004, he met with Wheelock and Roy Brown (Brown), defendant's former Chief Operating Officer, regarding a reduction of plaintiff's profit-sharing

---

[3] According to Smith, Devine was employed by defendant as vice president of service. (Smith Aff., ¶ 6).

5

compensation for 2003. (Compl., ¶ 15). According to plaintiff, he agreed to the reduction in the payments under the profit-sharing agreement in exchange for a block of stock options. (Id.). Plaintiff does not indicate where this discussion took place. However, Wheelock avers that any discussions plaintiff had with defendant's executives concerning his "bonuses" occurred in Georgia. (Wheelock Aff., ¶ 9).

Defendant terminated plaintiff's employment on or about May 14, 2004, effective May 31, 2004, during a training class that plaintiff was conducting in Georgia. (Compl., ¶ 22; Wheelock Aff., ¶ 11; Plf. Aff., p. 3). According to Dr. Wheelock, the decision to terminate plaintiff was made in Georgia. (Wheelock Aff., ¶ 11). According to plaintiff, all subsequent discussions with defendant regarding his termination were conducted via telephone and e-mail between him in New York and defendant in Georgia. (Plf. Aff., p. 3).

### 3. Location of Witnesses and Documents

According to Smith, Brown, Devine, and McGahan no longer work for defendant. (Smith Aff., ¶¶5-7). Smith advises that Brown currently resides in Lawrenceville, Georgia; Devine currently resides in Kennesaw, Georgia, and McGahan currently resides in Smyrna, Georgia. (Id.). Devine indicates that he "can make [himself] availably [sic] to testify at a trial in NY, providing sufficient notice is given." (Devine Aff., ¶ 8).

According to Wheelock, he was CEO of defendant until November 2004, at which time defendant went through a merger. (Wheelock Aff., ¶ 2). Wheelock avers that he continues to serve on defendant's Board of Directors; that he resides on Lookout Mountain, Tennessee, which is approximately two miles from the Georgia state line; and that he has an apartment and office in

Georgia. (Wheelock Aff., ¶ 3).

Smith further avers that all of plaintiff's personnel records, as well as any compensation or financial data upon which he may base his claims, were maintained in Georgia during the course of plaintiff's employment, and are currently maintained in both Georgia and Texas. (Smith Aff., ¶ 9).

### B.     Procedural History

On October 24, 2005, plaintiff filed this action against defendant alleging claims for breach of contract, fraud, retaliation, quantum meruit and violations of sections 190 and 198, *et seq.*, of the New York State Labor Law. In essence, plaintiff contends that he "has not received earned compensation in the form of non-discretionary profit-sharing in connection with [h]is former employment with Defendant * * *." (Compl., ¶ 23). Plaintiff seeks, *inter alia*, compensatory and liquidated damages, costs and attorney's fees.

Defendant now moves (1) pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of personal jurisdiction and/or improper venue; or (2), in the alternative, pursuant to 28 U.S.C. § 1404(a) to transfer this case to the United States District Court, Northern District of Georgia; or, (3) in the alternative, pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim.

II.    Discussion

    A.    Jurisdiction

        1.    Standard of Review

In resolving issues of personal jurisdiction in diversity cases, the court must determine (1) whether, under the laws of the forum state, in this case New York, there is jurisdiction over the defendant; and (2) whether an exercise of jurisdiction under the laws of the forum state is consistent with federal due process requirements. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006) (holding that in diversity cases, the issue of personal jurisdiction is governed by the laws of the forum state, so long as the exercise of jurisdiction comports with the requirements of due process). Although the plaintiff must ultimately establish personal jurisdiction over the defendant by a preponderance of the evidence, see Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984), in opposing a Rule 12(b)(2) motion prior to discovery, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. * * * Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Grand River Enterprises Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005), cert. denied sub nom King v. Grand River Enterprises Six Nations, Ltd., 127 S.Ct. 379, 166 L.Ed.2d 267 (2006) (quoting Bank Brussels, 171 F.3d at 784 (internal quotations and citations omitted)). In order to make a prima facie showing of jurisdiction, the plaintiff need only plead "legally sufficient allegations of jurisdiction." Jazini v.

*Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998); see also *Dorfman v. Marriott International Hotels, Inc.*, No. 99 Civ. 10496, 2002 WL 14363, at * 1 (S.D.N.Y. Jan. 3, 2002) (holding that when a motion to dismiss pursuant to Rule 12(b)(2) is brought on the pleadings, before any discovery has taken place, the plaintiff need only make a prima facie showing that personal jurisdiction exists, based on allegations of fact which will be taken as true).

"Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) motion necessarily requires resolution of factual matters outside the pleadings." *ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc.*, 390 F.Supp.2d 212, 217 (E.D.N.Y. 2005). "Where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F.Supp.2d 202, 205-206 (E.D.N.Y. 2006)(quoting *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 [2d Cir. 2001]); see also *Magnetic Audiotape*, 334 F.3d at 206 (holding that a plaintiff's averments of jurisdictional facts must be credited as true); *ADP Investor*, 390 F.Supp.2d at 217 (holding that where no jurisdictional discovery has been conducted, the plaintiff need only establish a prima facie case, and allegations of jurisdictional fact must be construed in a light most favorable to the plaintiff).

    2.   General Jurisdiction[4]–N.Y. C.P.L.R. §301

Under New York law, an out-of-state defendant is subject to general personal jurisdiction

---

[4] "General" jurisdiction exists where the plaintiff's claim is not related to the defendant's contacts in New York. See, e.g. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir. 2000) (stating that where the plaintiffs' claims is not related to the defendants' contacts with New York, jurisdiction is properly characterized as "general.")

if it is "doing business" in the state. N.Y. C.P.L.R. § 301; see also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000). Section 301 "permits a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.'" Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (citing McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)). "A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" Wiwa, 226 F.3d at 95 (quoting Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)).

In order to establish general personal jurisdiction under section 301, a plaintiff must demonstrate that the defendant engaged in "continuous, permanent, and substantial activity in New York." Landoil Resources, 918 F.2d at 1043. "The test is a 'simple pragmatic one' * * *, which is necessarily fact sensitive because each case is dependent upon its own particular circumstances." Id. (citations omitted). Factors to be considered in determining whether general jurisdiction lies under section 301 include: (1) whether the defendant maintains an office in New York; (2) whether the defendant has any bank accounts or other property within the state; (3) whether the defendant has a telephone listing in the state; (4) whether the defendant does public relations work or solicits business within the state; and (5) whether the defendant has employees or agents located within the state. See Wiwa, 226 F.3d at 98; Landoil Resources, 918 F.2d at 1043.

Plaintiff has not made a prima facie showing that defendant had a "substantial 'physical corporate presence' in [New York], permanently dedicated to promoting [its] interests," Wiwa, 226 F.3d at 98, sufficient to confer general personal jurisdiction over defendant. The evidence submitted on the motion establishes that defendant did not maintain an office in New York, did not have any bank accounts or other property in New York, did not have a New York telephone listing, did not perform public relations work in New York, and did not, as of the date the action was filed, have any employees permanently located in New York. Plaintiffs conclusory allegations to the contrary, particularly those stated only upon "information and belief," are insufficient to establish general personal jurisdiction over defendant pursuant to N.Y. C.P.L.R. § 301. See, e.g. Jazini, 148 F.3d at 185 (holding that courts are not bound to accept as true a legal conclusion couched as a factual allegation).

a. "Agency" or "Mere Department" Theory of Jurisdiction

Plaintiff maintains that general personal jurisdiction may be maintained over defendant because it has an agent in New York, HealthTronics Service Center Inc. (HTSCI), which is either a wholly-owned subsidiary or independent department of defendant and which consented to jurisdiction in New York when it registered with the Secretary of State of New York.

According to Smith, during plaintiff's employment, HTSCI operated under the name Prime Service Center, Inc. (PSCI) and was owned by Prime Medical Services, Inc. (PMSI) until PMSI merged with defendant effective November 9, 2004. (Smith Reply Aff., ¶ 6). After the merger, PSCI became HTSCI. (Id.). Defendant wholly owns Prime Medical Operating, Inc., which wholly owns HTSCI. (Id.). Smith maintains: (1) that HTSCI is not financially dependent

on defendant and instead relies on its own revenues; (2) that HTSCI directs its own marketing, operational policies and daily practices; and (3) that defendant and HTSCI "follow appropriate corporate procedures with respect to actions taken by their officers and boards." (Smith Reply Aff., ¶¶ 10-12). In addition, Smith maintains that only one of defendant's directors sits on HTSCI's board, as Chairman of the Board, and that "four individuals are officers of one of the companies but not the other." (Smith Reply Aff., ¶ 11). However, eight (8) of the ten (10) officers of HTSCI are also officers of defendant and vice versa. (Smith Reply Aff., Exhibit A).

Initially, since HTSCI is authorized by the New York Secretary of State to do business in New York, and, pursuant to New York Business Corporation Law § 304, has consented to jurisdiction in New York, general personal jurisdiction exists over HTSCI under N.Y. C.P.L.R. §301. See, e.g. Obabueki v. International Business Machines Corp., No. 99 Civ. 11262, 2001 WL 921172, at * 5 (S.D.N.Y. Aug. 14, 2001) (finding that the defendant who was authorized by the New York Secretary of State to do business in New York met the "doing business" criteria of section 301 for the purposes of personal jurisdiction); Amalgamet, Inc. v. Ledoux & Co., 645 F.Supp. 248, 249 (S.D.N.Y. 1986) (holding that the general rule is that a foreign corporation which files a certificate of authority to do business in New York has consented to personal jurisdiction in the state and that by filing its application for authority to do business in New York, defendant has also designated the Secretary of State as agent for service of process); Augsbury Corp. v. Petrokey Corp., 97 A.D.2d 173, 175, 470 N.Y.S.2d 787 (3d Dept. 1983) (holding that the defendant's authorization to do business in New York and concomitant designation of the Secretary of State as its agent for service of process pursuant to section 304(b) of the New York

Business Corporation Law is consent to in personam jurisdiction).[5]

The mere presence of a subsidiary in New York, without more, is insufficient to establish the parent company's presence in the state for jurisdiction purposes. See Jazini, 148 F.3d at 184; see also Beech Aircraft, 751 F.2d at 120 (holding that the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation). Rather, the subsidiary must be either an "agent" or a "mere department" of the parent company in order for personal jurisdiction to attach. Jazini, 148 F.3d at 184.

### i.    Agent

In order to establish that a domestic corporation is an agent of a foreign corporation, "the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'" Jazini, 148 F.3d at 184 (quoting Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967)(alteration in original)). "Courts have interpreted this to mean that the agent's activities in New York must be

---

[5] Although two district courts have held that a filing for authorization to do business alone is insufficient to confer personal jurisdiction, see Wright v. Maersk Line, Ltd., No. 99 Civ. 11282, 2000 WL 744370, at * 1 (S.D.N.Y. Jun. 9, 2000) and Bellepointe, Inc. v. Kohl's Department Stores, Inc., 975 F.Supp. 562, 564 (S.D.N.Y. 1997), those cases rely on mere *dictum* from a Second Circuit case, Beja v. Jahangiri, 453 F.2d 959, 961-962 (2d Cir. 1972), which vaguely stated that "the mere authorization to do business * * * may not be conclusive on the issue of [personal] jurisdiction * * * [but was] certainly very strong evidence that the corporation is subject to in personam jurisdiction." (emphasis added). Wright and Bellepointe are not persuasive in light of the majority of federal district courts and New York courts which hold that a filing for authorization to do business in New York is sufficient to subject a foreign corporation to general personal jurisdiction in New York. See, e.g. Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG, 409 F.Supp.2d 427, 436 (S.D.N.Y. 2006)(citing New York and federal cases), rejected on other grounds by Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006).

sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." Stutts v. De Dietrich Group, 465 F.Supp.2d 156, 162 (E.D.N.Y. 2006) (internal quotations and citations omitted). "To be considered an agent for jurisdictional purposes, the putative agent must have acted in the state 'for the benefit of, and with the knowledge and consent of' the non-resident principal." Ross v. UKI Ltd., No. 02 Civ. 9297, 2004 WL 384885, at * 4 (S.D.N.Y. Mar. 1, 2004) (quoting Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981)). In addition, the plaintiff must demonstrate that the principal exercised some control over the activities of the purported agent. Ross, 2004 WL 384885, at * 4 (citing CutCo Industries. Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986)). "The required control need not rise to the level of absolute control over the acts or decisions of the putative agent; rather, it may involve the ability of the principal to influence such acts or decisions by virtue of the parties' respective roles." Scholastic, Inc. v. Stouffer, No. 99 Civ. 11480, 2000 WL 1154252, at * 5 (S.D.N.Y. Aug. 14, 2000).

Plaintiff offers no factual allegations in support of its contention that HTSCI is an "agent" of defendant for purposes of personal jurisdiction, instead arguing that further discovery on this issue is warranted. Therefore, plaintiff fails to make any showing, never mind a prima facie showing, that jurisdiction should be based on an agency theory.

ii.     "Mere Department"

In determining whether a subsidiary is a "mere department" of the parent, the court should consider the following four factors: (1) whether there is common ownership; (2) whether

14

the subsidiary is financially dependent on the parent corporation; (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities;" and (4) the degree of control the parent corporation exerts over the subsidiary's marketing and operational policies. Jazini, 148 F.3d at 185; Beech Aircraft, 751 F.2d at 121-122. Only the first factor–common ownership– is essential to a finding that a subsidiary is a "mere department" of the parent corporation; whereas the other three factor necessitate a balancing process. See Beech Aircraft, 751 F.2d at 120; Dorfman, 2002 WL 14363, at * 7 (citing cases); see also Allojet PLC v. Vantage Associates, No. 04 Civ. 5223, 2005 WL 612848, at * 5 (S.D.N.Y. Mar. 15, 2005).

Here, there is common ownership of defendant and HTSCI, but plaintiff does not offer any factual allegations to dispute Smith's assertions that HTSCI is not financially dependent on defendant and does not control HTSCI's marketing or operational policies. However, defendant's involvement in the selection and assignment of HTSCI's executive personnel cannot be determined at this stage, prior to discovery. Although some amount of overlap between the officers and directors of corporations under common ownership is to be expected and does not necessarily warrant a finding that the subsidiary is a "mere department" of the parent, see, e.g. Jazini, 148 F.3d at 185 (finding that the fact that one of the defendant's four managing executive directors is the chairman of the subsidiary does not establish that the subsidiary is a "mere department" of the parent); Porter v. LSB Industries, Inc., 192 A.D.2d 205, 600 N.Y.S.2d 867 (4th Dept. 1993) (holding that the fact that the directors and officers of the subsidiary and parent corporations overlap to an extent is intrinsic to the parent-subsidiary relationship and is not, itself, determinative), since all but two (2) of HTSCI's ten (10) officers are officers of defendant,

15

and the President and CEO and director of defendant is the chairman of the board of HTSCI, there is at least an inference that defendant has control over the selection and assignment of HTSCI's executive personnel. See, e.g. Obabueki, 2001 WL 921172, at * 5 (finding that the structural overlap that existed where all but one of the officers of the putative agent was an officer of the parent corporation, and each of the agent's board members was an officer or director of the parent suggested that the parent had control over the selection and assignment of its subsidiary's executive personnel); Derthick v. Bassett-Walker Inc., No. 90 Civ. 5427, 1992 WL 249951, at * 3 (S.D.N.Y. Sept. 23, 1992) (holding that evidence of excessive parental interference in the selection and assignment of the subsidiary's executive personnel may be found in the presence of interlocking officers and directors and finding that the fact that the parent company's two highest ranking officers were members of the subsidiary's board of directors, and that the subsidiary's chairman of the board was a member of the parent's board of directors, coupled with evidence that the companies disregarded corporate formalities, weighed in favor of exercising jurisdiction).

Since at this juncture all inferences must be drawn in favor of plaintiff, and two of the four factors arguably support a finding that HTSCI is a "mere department" of defendant for the purposes of personal jurisdiction under section 301, the branch of defendant's motion which seeks dismissal for lack of personal jurisdiction is denied. Plaintiff's application for leave to conduct jurisdictional discovery is granted to the extent that plaintiff is permitted to conduct such discovery limited to the facts necessary to establish general jurisdiction under a "mere department" theory. See, e.g. Allojet, 2005 WL 612848, at * 7 (permitting jurisdictional discovery, limited to the facts relating to establishing general jurisdiction, notwithstanding the

16

plaintiff's failure to make a prima facie showing under section 301).

### 3. Specific Jurisdiction

Personal jurisdiction may still be found to exist over a defendant who is not "doing business" in New York within the meaning of section 301 based on the defendant's transaction of business within the state pursuant to N.Y. C.P.L.R. § 302. Section 302(a)(1) permits the exercise of personal jurisdiction over an out-of-state defendant if (1) that defendant "transacts any business within the state" and (2) the claim arises from such business contacts. See D.H. Blair, 462 F.3d at 104; Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996).

To meet the "transacting business" element, the plaintiff must demonstrate that the defendant "purposely availed [itself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws * * *." Bank Brussels, 171 F.3d at 787 (quoting Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506, 509 (1970)). In Agency Rent A Car, the Second Circuit enumerated a variety of factors to be considered in determining whether an out-of-state defendant transacts business in New York, including: "(i) whether the defendant has an on-going contractual relationship with a New York corporation * * *; (ii) whether the contract was negotiated or executed in New York * * *, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship * * *; (iii) what the choice-of-law clause is in any such contract * * *; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to

17

supervision by the corporation in the forum state * * *." 98 F.3d at 29 (citations omitted). No

one factor is dipositive and the court must look at the totality of circumstances concerning the

defendant's interactions with, and activities within, the state. Id.

Plaintiff's claims against defendant relate to payments allegedly due plaintiff by

defendant under the profit-sharing and stock option agreements and the termination of his

employment by defendant. In this case, none of the factors cited by the Second Circuit support

the exercise of personal jurisdiction under the "transacting business" section of New York's

long-arm statute with respect to those claims. Specifically, any contracts between the parties

with respect to the profit-sharing and stock option payments and plaintiff's employment were not

negotiated or executed in New York, the only choice-of-law provision is contained in the stock

option agreement and calls for the application of Georgia law, plaintiff does not allege that he

participated in any meetings with defendant in New York regarding the formation, performance

or breach of contract or that defendant otherwise purposefully availed itself of the privilege of

conducting activities within the State of New York, and plaintiff was terminated in Georgia. See,

e.g. Barrett v. Tema Development (1988), Inc., 463 F.Supp.2d 423, 430-431 (S.D.N.Y. 2006);

Singer v. Carrington Laboratories, No. CV-01-2084, 2001 WL 995353, at * 7 (E.D.N.Y. Aug.

28, 2001). In addition, defendant's use of telephone, facsimiles or e-mails to communicate with

plaintiff in New York are insufficient to establish that defendant transacted business in New

York, absent any indication that defendant intended "to project itself into ongoing New York

commerce." Kulas v. Adachi, No. 96 Civ. 6674, 1997 WL 256957, at * 7 (S.D.N.Y. May 16,

1997); see also Copeland v. Life Science Technologies, Ltd., No. 97 Civ. 0456, 1997 WL

716915, at * 2 (S.D.N.Y. Nov. 17, 1997).[6]

### 4. Due Process

In order to satisfy constitutional due process requirements, the exercise of long-arm jurisdiction "must be based on defendants' 'minimum contacts' with the state and must comport with 'traditional notions of fair play and substantial justice.'" Agency Rent A Car, 98 F.3d at 32 (citing International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945)); see also Wiwa, 226 F.3d at 99 (accord). Where specific jurisdiction is found, minimum contacts exist "where the defendant purposefully availed itself of the privilege of doing business in the forum and could forsee being haled into court there," but where general jurisdiction is found, minimum contacts exist only where the contacts "are continuous and systematic." Bank Brussels, 305 F.3d at 127 (internal quotations and citations omitted). Generally, "once a plaintiff has made a 'threshold showing' of minimum contacts, the defendant must come forward with a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable." Wiwa, 226 F.3d at 99 (citing Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).

The Second Circuit has enumerated the following factors in determining whether the exercise of jurisdiction "comports with traditional notions of fair play and substantial justice:"

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest

---

[6] Since plaintiff has not made a prima facie showing that defendant transacted business in New York, it is unnecessary to consider the "arising out of" element of specific jurisdiction.

in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."

Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1028 (2d Cir. 1997) (citation omitted); see also Bank Brussels, 305 F.3d at 129 (accord).

"A voluntary use of certain state procedures, as in [the case where the defendant is authorized to do business in the State and designates the Secretary of State as its agent for service of process pursuant to section 304 of the New York Business Corporation Law], is in fact a form of constructive consent to personal jurisdiction which has been found to satisfy due process." Augsbury, 97 A.D.2d at 176, 470 N.Y.S.2d 787 (citing Insurance Corporation of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 703-704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). Since personal jurisdiction over defendant only exists if HTSCI is found to be a "mere department" of defendant, HTSCI's authorization to do business and concomitant designation of the Secretary of State as its agent for service of process would also satisfy due process requirements.


B.     Transfer

Defendant contends that even if this Court has personal jurisdiction over it, plaintiff's claims should be transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

Motions for change of venue are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."[7]
Notions of convenience and fairness must be determined on a case-by-case basis and district
courts have broad discretion to transfer actions pursuant to section 1404(a). See In re Cuyahoga
Equipment Corp., 980 F.2d 110, 117 (2d Cir. 1992). Factors to be considered in determining
whether an action should be transferred pursuant to section 1404(a) include: "(1) the plaintiff's
choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and
relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of
operative facts, (6) the availability of process to compel the attendance of unwilling witnesses,
[and] (7) the relative means of the parties," D.H. Blair, 462 F.3d at 106 (citing Albert Fadem
Trust v. Duke Energy Corp., 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002)), as well as (8) the
forum's familiarity with the governing law, and (9) judicial economy and the interests of justice,
based on the totality of circumstances. See Navigators Management Co., Inc. v. St. Paul Fire and
Marine Ins. Co., No. 06 Civ. 599, 2006 WL 3317030, at * 2 (S.D.N.Y. Nov. 9, 2006); see also
International Securities Exchange, LLC v. Chicago Board Options Exchange Inc., No. 06 Civ.
13445, 2007 WL 1541087, at * 2 (S.D.N.Y. May 24, 2007)(holding that a could should also
consider the transferee court's familiarity with the governing law, as well as trial efficiency and
the interests of justice). The moving party bears the burden of making a "clear and convincing
showing" that there should be a transfer of venue. International Securities, 2007 WL 1541087, at
* 2 (quoting Montgomery v. Tap Enterprises, Inc., No. 06 Civ. 5799, 2007 WL 576128, at * 2
(S.D.N.Y. Feb. 26, 2007)); see also Tralongo v. Shultz Foods, Inc., No. 06 Civ. 13282, 2007 WL

---

[7] The parties do not dispute that this action could have been brought in the Northern
District of Georgia.

21

844687, at * 2 (S.D.N.Y. Mar. 14, 2007) (holding that the burden of demonstrating that a transfer is warranted lies with the moving party, and a court should not disturb the plaintiff's choice of forum unless the defendant makes a "clear and convincing showing" that the balance of convenience favors a transfer).

### 1.    Plaintiff's Choice of Forum

The plaintiff's choice of forum is to be given great weight, see D.H. Blair, 462 F.3d at 106; Albert Fadem Trust, 214 F.Supp.2d at 343, and this factor clearly favors plaintiff herein. Unless the balance of the remaining factors weighs "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." International Securities, 2007 WL 1541087, at * 2. However, the plaintiff's choice of forum "is not entitled to the weight it is generally accorded when the forum chosen has no material connection with the action." Tralongo, 2007 WL 844687, at * 4. Here, the only connection that plaintiff's claims have with New York are his residence in this state. Thus, this factor is not entitled to the deference normally due it in balancing the factors relative to a transfer motion.

### 2.    Convenience of Witnesses

The convenience of witnesses, particularly nonparty witnesses, is an important factor in considering a transfer pursuant to section 1404(a). Navigators Management, 2006 WL 3317030, at * 4; see also International Securities, 2007 WL 1541087, at * 3 (holding that the convenience of witnesses is probably the single-most important factor in the analysis of whether transfer should be granted); Tralongo, 2007 WL 844687, at * 2 (accord). All of the potential witnesses

identified,[8] other than plaintiff, are nonparties to this action and reside in or near, or work in, Georgia, and only one of those witnesses, Devine, has indicated a willingness to travel to New York to testify in this matter. As "the convenience of a party witness is entitled to less weight than the convenience of a nonparty," Navigators Management, 2006 WL 3317030, at * 4, this factor strongly weighs in favor of a transfer. See, e.g. International Securities, 2007 WL 1541087, at * 4 (finding that since every witness who could testify at trial resided or worked in the transferee district, the "convenience of witnesses" factor strongly favored a transfer); Tralongo, 2007 WL 844687, at * 3 (finding that the "convenience of witnesses" factor weighed in favor of a transfer where the plaintiff's immediate supervisors, and all persons responsible for the relevant personnel decisions, worked in the transferee court's district).

### 3.    Location of Documents

Plaintiff does not dispute that all relevant documents and other evidence in the possession of defendant are located either in Texas or Georgia and not in New York. Accordingly, this factor weighs in favor of a transfer. However, "[t]he location of relevant documents is not a very compelling factor because records are easily portable." Navigators Management, 2006 WL 3317030, at * 5.

### 4.    Convenience of Parties

The "convenience of the parties" factor is relatively neutral. Although defendant currently

---

[8] The potential witnesses identified by the parties are Argil Wheelock, Roy Brown, Bradley Devine, Martin McGahan and Victoria Beck.

has its headquarters in Texas, it maintains offices and certain documents in Georgia and, thus, Georgia, to which defendant seeks this action to be transferred, would be slightly more convenient to it than New York. Plaintiff resides in New York and, thus, New York would be a more convenient forum for him. However, during the course of his employment with defendant, plaintiff regularly traveled to Georgia, as well as nationally and to Canada. Thus, it cannot be said that plaintiff would be greatly inconvenienced if he had to litigate the present action in Georgia.

### 5. Locus of Operative Facts

The "locus of operative facts" factor "is traditionally an important factor to be considered in deciding where a case should be tried." International Securities, 2007 WL 1541087, at * 5 (internal quotations and citations omitted); see also Tralongo, 2007 WL 844687, at * 3 (holding that the location of operative facts is a primary factor in a transfer motion). "Courts routinely transfer cases to the district where the principal events occurred, and where the principal witnesses are located * * *." Tralongo, 2007 WL 844687, at * 3. The terms of plaintiff's employment and profit-sharing and stock option agreements were negotiated by defendant in Georgia via telephone, facsimile and e-mail to plaintiff in New York, but, according to defendant, the decision to hire plaintiff was made in Georgia. The stock option agreement contains a choice-of-law provision providing that the laws of the State of Georgia were to apply thereto. Plaintiff performed his employment duties both in New York and Georgia, as well as in the New England area and Canada, but, according to defendant, he reported to Devine in Georgia. According to defendant, any compensation and bonus payments to plaintiff were

24

approved and paid out by defendant in Georgia and any discussions and meetings plaintiff had with defendant's executives concerning such payments occurred in Georgia. Moreover, plaintiff was terminated in Georgia and the decision to terminate plaintiff was made in Georgia, although, according to plaintiff, all subsequent discussions with defendant regarding his termination were conducted via telephone and e-mail between him in New York and defendant in Georgia. Since a substantial portion of the facts relevant to plaintiff's claims occurred in Georgia, this factor weighs in favor of transfer.

### 6. Availability of Process

"Availability of compulsory process is an important consideration in transfer motions." International Securities, 2007 WL 1541087, at * 4 (internal quotations and citation omitted). In the event service of process is necessary to compel the appearance of any unwilling nonparty witnesses, the Northern District of Georgia could subpoena the potential witnesses identified, who are located within that district, or within one hundred (100) miles thereof, see Fed. R. Civ. P. 45(b)(2), whereas this Court cannot. Thus, this factor strongly weighs in favor of transfer. See, e.g. International Securities, 2007 WL 1541087, at * 4 (finding that the "service of process" factor strongly weighed in favor of a transfer because none of the nonparty witnesses were subject to subpoena power in New York, but were subject to such authority in the transferee court's district).

### 7. Means of Parties

Since plaintiff is an individual and defendant is a corporation, the "relative means of the

parties" factor weighs in favor of plaintiff.

### 8. Familiarity with Law

To the extent plaintiff's claims pertain to the stock option agreement, that document contains a choice-of-law provision providing that Georgia law is to be applied and plaintiff does not allege that that provision is unenforceable due to fraud or bad faith or for public policy considerations. Moreover, applying a choice-of-law analysis to plaintiff's remaining claims establishes that Georgia law applies to plaintiff's contract and quasi-contract claims, but New York applies to plaintiff's tort claims, to the extent those claims pertain to the profit-sharing agreement.

In diversity cases, federal courts apply the choice-of-law analysis of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed.2d 1477 (1941). Accordingly, New York choice-of-law rules apply here.

With respect to plaintiff's contract and quantum meruit or quasi-contract claims, New York courts apply a "center of gravity" or "grouping of contacts" analysis to choice-of-law situations in order to determine which state has the most significant relationship to the transaction and the parties. Matter of Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 226, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993); see also Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 583 (2d Cir. 2006) (applying New York law to contract claims); Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 394 (2d Cir. 2001) (applying New York law to quantum meruit claims). In applying a "center of gravity" or "grouping of contacts" analysis, the court should consider the following factors: "[1] the place of

contracting, negotiation and performance; [2] the location of the subject matter of the contract; and [3] the domicile [or place of business] of the contracting parties." Stolarz, 81 N.Y.2d at 227, 597 N.Y.S.2d 904; see also Fieger, 251 F.3d at 394 (citing Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 618 N.Y.S.2d 609, 612, 642 N.E.2d 1065 (1994)).

Applying the "center of gravity" or "grouping of contacts" analysis, Georgia law applies to plaintiff's contract and quasi-contract claims. Plaintiff alleges that he negotiated the terms of the profit-sharing agreement while he was in New York with defendant's personnel located in Georgia, and he does not indicate where he was located when he actually entered into the contract. Accordingly, this factor is neutral. In addition, the "domicile of the parties" factor is neutral, since the parties are domiciled in different states. However, plaintiff does not dispute that all decisions regarding payments due him under the alleged agreement were made in Georgia or that all payments were issued to him from Georgia. Accordingly, the place of performance of the profit-sharing agreement was Georgia. Since this is the only determinative factor, Georgia law applies to plaintiff's contract and quasi-contract claims pertaining to the profit-sharing agreement.

However, contrary to defendant's claim, New York law applies to plaintiff's remaining claims for fraud and violations of the New York State Labor Law as those claims pertain to the profit-sharing agreement[9], as well as to plaintiff's retaliation claim. New York courts apply an "interest analysis," which requires the application of "the law of the jurisdiction having the greatest interest in the litigation * * *." Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996)

---

[9] As noted above, since the stock option agreement contains a choice-of-law provision providing that Georgia law applies, this analysis is not applicable to plaintiff's fraud and Labor Law claims to the extent they pertain to the stock option agreement.

(internal quotations and citations omitted) (applying New York law). In determining which state has the greater interest, the court must make two separate inquiries: "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss." Id. at 645-646 (citing Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 620 N.Y.S.2d 310, 311, 644 N.E.2d 1001, 1002 (1994)); see also Grosshandels-und Lagerei-Berufsgenossenschaft v. World Trade Center Properties, LLC, 435 F.3d 136, 139 (2d Cir. 2006), cert. denied, 127 S.Ct. 43, 166 L.Ed.2d 19 (2006). "In all interest analyses, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." Krock, 97 F.3d at 646 (internal quotations and citations omitted); see also Merrill Iron & Steel, Inc. v. Yonkers Contracting Co., No. 05 Civ. 5042, 2006 WL 2679940, at * 4 (S.D.N.Y. Sept. 19, 2006). Where, as here, the parties are domiciled in different states, "the locus of the tort will almost always be determinative in cases involving conduct-regulating laws." Krock, 97 F.3d at 646.

Since plaintiff's fraud, retaliation and Labor Law claims are conduct-regulating claims, the proper body of law to be applied thereto turns on the locus of the tort. "When 'the defendant's * * * conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred.'" Merrill Iron, 2006 WL 2679940, at * 4 (citing Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 195, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)). Although defendant was located in Georgia when it entered into the profit-sharing agreement, which is when plaintiff alleges the fraudulent conduct occurred, and all decisions regarding the payments allegedly due plaintiff under the profit-sharing agreement were made in Georgia, the

28

last event necessary to make defendant liable for fraud and/or violation of the New York Labor Law was its alleged failure to make payments purportedly due plaintiff in New York under the agreement. Thus, plaintiff's injuries were suffered in New York. See, e.g. Id. (finding that New York law applied to plaintiff's tort claims where the last event necessary to make the defendant liable was its alleged failure to issue a joint check to New York). In addition, plaintiff's injuries following his termination were suffered in New York. Therefore, New York law applies to plaintiff's fraud and Labor Law claims as those claims relate to the profit-sharing agreement, as well as to plaintiff's retaliation claim.

In sum, this factor weighs slightly in favor of transfer, since Georgia law applies to more of plaintiff's claims than does New York law and, thus, the Northern District of Georgia is more familiar with the law applicable to the majority of claims.

### 9. Interests of Justice

Finally, interests of judicial economy weigh in favor of a transfer. The "interest of justice" factor "relates primarily to issues of judicial economy." Colida v. Panasonic Corp. of North America, No. 05 Civ. 5791, 2005 WL 3046298, at * 4 (S.D.N.Y. Nov. 10, 2005) (internal quotations and citation omitted). Although docket conditions and calendar congestion, alone, are insufficient to support a transfer motion, they are properly considered and entitled to "some weight." In re Hanger Orthopedic Group, Inc. Securities Litigation, 418 F.Supp.2d 164, 171 (E.D.N.Y. 2006); see also Colida, 2005 WL 3046298, at * 4.

It is undisputed that the docket of the Eastern District of New York is significantly more congested than the docket of the Northern District of Georgia: As of September 30, 2006, the

total number of pending cases (civil and criminal) per active judge in the Eastern District of New York was more than double that of the Northern District of Georgia--six hundred ninety-seven (697) as compared to three hundred twenty-five (325), respectively. <u>See</u> Administrative Office of the United States Courts, <u>Federal Court Management Statistics</u> (FCMS), <u>available</u> <u>at</u> <u>http://www.uscourts.gov/cgi-bin/cmsd2006.pl.</u> In addition, the median disposition time is less in the Northern District of Georgia than in this Court (9.5 months as compared to 10.5 months). <u>Id.</u>

Since plaintiff has not offered any competing concerns with respect to this factor, interests of judicial economy weigh in favor of transfer.


III.     CONCLUSION

Based on the totality of the circumstances, I find that defendant has made a "clear and convincing showing" that the balance of factors weighs strongly in favor of transferring this action to the Northern District of Georgia.[10] Accordingly, the branch of defendant's motion which seeks to transfer venue of this action pursuant to 28 U.S.C. § 1404(a) is granted and the clerk of the Court is directed to transfer this case to the Northern District of Georgia. Defendant's motion is otherwise denied.

SO ORDERED

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 2𝑐, 2007
       Central Islip, N.Y.

_____

[10] In light of this determination, I decline to address the branch of defendant's motion seeking dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

30

Copies to:

Zabell & Associates, P.C.
4875 Sunrise Highway, Suite 300
Bohemia, New York 11716

Collier, Halpern, Newberg,
Nolletti & Bock LLP
One North Lexington Avenue, 15th Floor
White Plains, New York 10601